STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; AND MCI TELECOMMUNICATIONS CORPORATION v. THE PUBLIC STAFF; SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY; CENTRAL TELEPHONE COMPANY; ALLTEL CAROLINA, INC.; GENERAL TELEPHONE COMPANY OF THE SOUTHEAST; CAROLINA TELEPHONE COMPANY; TELECOMMUNICATIONS SYSTEMS, INC.; CAROLINA UTILITY CUSTOMERS ASSOCIATION; NORTH CAROLINA LONG DISTANCE ASSOCIATION; AT&T COMMUNICATIONS OF THE SOUTHERN STATES, INC.; AND U.S. SPRINT COMMUNICATIONS COMPANY

Nos. 8710UC701
8710UC802

(Filed 15 March 1988)

Telecommunications § 1.1— issuance of certificate of authority postponed—investment in facilities by phone company—no deprivation of vested property right

The Utilities Commission did not unconstitutionally deprive MCI of a vested property right by postponing the issuance of certificates authorizing MCI to provide certain long distance services in North Carolina, since the Commission's order merely indicated that it was the policy of the Commission to allow the service in question once all the issues and problems were resolved; pursuant to N.C.G.S. § 62-110(b) the Commission could not issue a certificate of authority without making the requisite findings; and MCI assumed the risk that the findings would not be made by the anticipated date when it spent $34 million to develop its network to provide the services in question.

APPEALS by MCI Telecommunications Corporation (MCI) from orders of the North Carolina Utilities Commission entered

23 December 1986 and 1 April 1987. Heard in the Court of Appeals 29 February 1988.

These are appeals from decisions of the North Carolina Utilities Commission postponing the issuance of certificates authorizing MCI to provide certain long distance services in North Carolina. These decisions stem from the federal court-ordered breakup of the American Telephone and Telegraph Company. For a detailed summary of the breakup and its effect on the North Carolina telecommunications market, *see State ex rel. Utilities Comm. v. Southern Bell*, 88 N.C. App. 153, 363 S.E. 2d 73 (1987).

In this case, the only segment of the breakup at issue is the competition of carriers other than AT&T in the long distance market. These other common carriers (OCCs), including MCI, were first allowed by the Federal Communications Commission to complete interstate calls. The North Carolina Utilities Commission has also authorized MCI and other OCCs to complete long distance calls within the state between Local Access and Transport Areas (LATAs). LATAs are "calling zones" normally located around large cities. North Carolina has five LATAs encompassing most of the state, situated around Raleigh, Wilmington, Greensboro, Charlotte and Asheville.

Within the LATAs, local calls and short intraLATA long distance calls have been completed by local exchange companies (LECs) such as Southern Bell Telephone and Telegraph Company. By an order of 22 February 1985, the Utilities Commission found that intraLATA long distance competition would be in the public interest, "subject to the resolution of certain important issues. . . ." The Commission then stated that intraLATA resale competition would be permitted no later than 1 January 1986. Resellers are companies which merely resell the services of a LEC without using their own facilities.

The Commission additionally stated: "Competition by intraLATA facilities-based carriers will be allowed after a transition period of approximately two years on January 1, 1987." This would have allowed OCCs such as MCI to complete intraLATA calls using their own facilities. The transitional period was necessary for the Commission to review how billing would be handled and how much compensation OCCs should pay LECs,

which had always subsidized local service with toll revenues from long distance calling.

After the order of 22 February, various additional hearings were held. On 30 September 1985 the Commission ordered MCI to pay LECs 4.72 cents per conversation minute for unauthorized intraLATA calls. On 19 December 1985 the Commission specifically permitted *resale* intraLATA competition to begin on 1 January 1986, which carried out the first part of the intraLATA competition plan.

By order of 4 February 1986 the Commission scheduled hearings to consider (1) the appropriate level and structure of access charges, (2) the existing toll pooling and settlement procedures and toll deaveraging, and (3) intraLATA competition by facilities-based carriers. These hearings were conducted beginning on 8 July 1986. At the hearings, the Public Staff argued that local exchange service was threatened to such an extent that permission to compete in the intraLATA market by facilities-based OCCs should be denied.

The Commission then decided, because the issues concerning among other things billing and compensation had not been resolved, the date for facilities-based intraLATA competition should be postponed. On 23 December 1986, the Commission entered an order to that effect. It did allow companies such as MCI to resell services and it continued the compensation plan for unauthorized intraLATA calls.

Between 22 February 1985 and 23 December 1986 MCI spent over $34 million in development of a network in North Carolina. Although the facilities would have been used for intraLATA service, MCI can use them for interLATA and interstate service.

MCI appealed the Commission's order and also petitioned the Commission to reconsider the order. That petition was later denied and MCI also appealed from that denial.

*Adams, McCullough & Beard, by Charles C. Meeker and Gary S. Maines, for MCI Telecommunications Corporation, appellant.*

*Hunton & Williams, by Edward S. Finley, Jr., and Frank A. Schiller; and J. Billie Ray, Jr., and Edward L. Rankin, III, for Southern Bell Telephone and Telegraph Company, appellee.*

*Public Staff Executive Director Robert P. Gruber, by Chief Counsel Antoinette R. Wike, for North Carolina Utilities Commission, appellee.*

HEDRICK, Chief Judge.

At oral argument, counsel for MCI stated that the only question raised by these appeals is whether the Commission violated MCI's vested right to provide intraLATA service via its own facilities. Appellant argues the order entered on 22 February 1985 gave it a vested property right of which it was unconstitutionally deprived by the Commission's failure to allow facilities-based intraLATA competition on 1 January 1987. The Public Staff and Southern Bell, appellees, on the other hand, argue the order of the Commission from which these appeals were taken failed to vest in MCI any property right whatsoever. They argue that before MCI could have the right to provide intraLATA service via its own facilities the Commission must issue a certificate of authority to MCI, and that the Commission could not issue this certificate without making the requisite findings of fact pursuant to G.S. 62-110(b), which states:

> (b) The Commission shall be authorized to issue a certificate to any person applying to the Commission to offer long distance services as a public utility as defined in G.S. 62-3(23)a.6., provided that such person is found to be fit, capable, and financially able to render such service, and that such additional service is required to serve the public interest effectively and adequately; provided further, that in such cases the Commission shall consider the impact on the local exchange customers and only permit such additional service if the Commission finds that it will not jeopardize reasonably affordable local exchange service.

We hold the order of the Commission in question merely indicated it was the policy of the Commission to allow intraLATA service once all the issues and problems were resolved. While the language in the order of the Commission is less than clear, the statutes are very clear that the Commission could not issue a certificate of authority without making the requisite findings, and MCI assumed the risk that the findings would not be made by 1 January 1987.

Affirmed.

Judges JOHNSON and ORR concur.